* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, AFFIRMS with modifications, the Opinion and Award of the Deputy Commissioner.
 STIPULATIONS
1. The parties hereto are subject to the jurisdiction of the North Carolina Workers' Compensation Act and to the North Carolina Industrial Commission.
2. At all relevant times an employment relationship existed between the Plaintiff, Carlton R. Meadows, and Defendant, Roadway Express, Inc.
3. Defendant-Employer employed three or more employees.
4. Defendant-Employer is self-insured with Gallagher Bassett Services, serving as third party administrator.
5. The parties have submitted stipulated documents, Stipulated Exhibit 1 existing of pages 1 through 107 [now pp. 11-125]; Exhibit 1-A consisting of pages 108 through 111 (now pp.); and Stipulated Exhibit 2 consisting of the stipulated Industrial Commission forms.
 * * * * * * * * * * *
Based upon the competent evidence presented, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, the plaintiff was 39 years old and had begun working for defendant as a dockworker in October 1998. Plaintiff's job duties as a dockworker involved heavy lifting. His duties included loading and unloading some hand freight and motor freight, as well as some strip loads and stack loads.
2. In September or October 2002, plaintiff was injured at home in his back yard when he stepped in a hole while preparing to mow his lawn. Due to the injury, plaintiff underwent a surgical laminectomy by Dr. John Hayes in December 2002 to remove a bone fragment. Plaintiff recovered well post-operatively and was released to full duties by Dr. John Hayes on April 3, 2003. Plaintiff returned to work as a dockworker on or about April 10, 2003.
3. Before defendant allowed plaintiff to return to work, he was required to undergo an independent, Return to Work Evaluation conducted by Dr. John Collins at Concentra Medical Centers on April 4, 2003 to ensure he was physically fit to perform his job duties. During his Return to Work Evaluation arranged by defendant, the plaintiff was required to lift 100 pounds from floor to waist to chest, lift 60 pounds overhead, and push and pull a 270 pound sled, 50 feet. He performed these tasks without difficulty and was cleared to return to work performing his pre-injury job duties.
4. Plaintiff testified that the night and next day following his Return to Work Evaluation he felt no pain and that he returned to work on or about April 10, 2003. Defendant's records show, however, that he returned to work on April 7, 2003, worked one day, was off two days and then worked April 11, 12, 13 and 14 for eight hour shifts.
5. On April 13, 2003, plaintiff's job required him to lift textile rolls that were approximately 5-6 feet long and weighed from 60 to 80 pounds. He lifted some of the rolls overhead. This was the heaviest lifting he had done since returning to work. Plaintiff injured his back at approximately 2:00 a.m. while lifting textile rolls, but finished out the shift. He was experiencing severe pain when he got home, but he went to work the next day because he was hoping it was just a pulled muscle, he needed the money and thought he could "tough it out."
6. After several days, due to severe pain, plaintiff opted to take a one-week "vacation" in order to try to recover at home. By April 17, 2003, he was having difficulty getting out of bed.
7. Plaintiff returned to Dr. Hayes on or about April 22, 2003 and reported the injury to defendant on April 26 or 28, 2003. Defendant denied plaintiff's claim on a Form 61.
8. The primary issues in dispute are whether plaintiff sustained a compensable injury as a direct result of a specific traumatic incident of the work assigned by defendant-employer on or about April 13, 2003; (2) if so, whether plaintiff's resulting disability and need for medical treatment were casually related to the incident; (3) whether plaintiff's pre-existing condition remained disabling upon his return to work; and (4) whether plaintiff had wage earning capacity when he returned to work.
9. After his workers' compensation claim was denied, the Union at plaintiff's workplace referred him to Central States, the company handling defendant's health insurance to get his medical bills paid. Central States denied coverage because plaintiff had not been back at work for 30 days after his previous disability as required to be eligible.
10. Plaintiff's back injury arose out of and in the course of employment and was a direct result of a specific traumatic incident of the work assigned to him by his defendant-employer. Plaintiff testified that he felt a sudden onset of back pain around 2:00 a.m. on April 13, 2003 while handling textile rolls. Plaintiff's injury occurred during a cognizable period of time. The Full Commission finds plaintiff's testimony on how and when his injury occurred to be credible.
11. Although plaintiff did not immediately report his injury, he filed a written report of injury with defendant-employer within 30 days. Also, Sue Oetkin, defendant's Director of Human Resources and Safety Manager, testified that plaintiff had talked to her on April 23, 2003 about his back injury, but she did not ask him if he had hurt his back at work. Plaintiff asked her about going out on disability for his back injury at that time. Plaintiff timely filed his report of injury. Defendant was not prejudiced by plaintiff's failure to give immediate written notice of injury.
12. On April 22, 2003, plaintiff sought treatment for his April 13, 2003 back injury with Dr. John T. Hayes who had previously treated him. Dr. Hayes medical notes indicate that plaintiff returned to work for two weeks and then hurt his back due to lifting some heavy rolls of fabric or some other material. A new x-ray was taken, which showed no increase in his pre-existing spondylolisthesis. Plaintiff was taken out of work due to his pain and restricted from work requiring heavy lifting. By May 1, 2003, Dr. Hayes noted that plaintiff's pain seemed to be "unremitting." He had received narcotic medication injections at the emergency room a couple of times and his back was "just as stiff as a board." Dr. Hayes recommended a lateral fusion from L5 to the sacrum.
13. Dr. Hayes testified that he had intended to release plaintiff to a job of switching trucks at Roadway rather than to full dock work duties after plaintiff's non-work related injury of October 2002. However, his written note of March 13, 2003 released plaintiff to his "normal" job duties, which Dr. Hayes knew to be the heavy duties of a dock worker. Dr. Hayes testified that plaintiff probably had a 15 to 20% disability to the spine as a result of the first accident, before the job related injury of April 13, 2003.
14. On the question of causation for plaintiff's April 13, 2003 injury, Dr. Hayes testified, "clearly, he has superimposed a new injury on a segment which was weakened by the preexisting congenital condition." He further opined that the new injury did exacerbate and make worse the original injury.
15. Plaintiff's family physician referred him to Dr. Birkedal after Dr. Hayes retired during the latter part of July 2003. Plaintiff first saw Dr. Birkedal on June 16, 2003. Dr. Birkedal testified that the plaintiff reported he had returned to work and reinjured his back on April 13, 2003. Plaintiff also informed Dr. Birkedal of his prior injury and surgery due to a non-work related injury. Dr. Birkedal determined that plaintiff needed surgery and performed spinal surgery on plaintiff on August 14, 2003, consisting of a revision decompression and a posterior spinal fusion, utilizing bone grafts and instrumentation. He opined that it is unlikely plaintiff would be able to return to heavy labor employment and that he should get some retraining so he can do sedentary or light work. Dr. Birkedal was of the opinion at the time of his deposition that plaintiff was likely at maximum medical improvement, except he had recommended that plaintiff get a CT scan, which had not been done. He needed the CT scan to make sure plaintiff had a solid fusion. Dr. Birkedal has not assigned a disability rating to plaintiff's back, but believes it would be closed to 47.5%.
16. After reviewing the records of Dr. Hayes and Concentra Medical Services, Dr. Birkedal testified that it was fair to conclude that the plaintiff, Dr. Hayes, and Concentra Medical Services all agreed in April, 2003 that plaintiff had sufficiently recovered from the first injury to return to work at Roadway.
17. On the issue of causation, Dr. Birkedal gave the following opinions in response to the following questions:
 Q. Dr. Birkedal, based on the history that Mr. Meadows described and your review of medical records, your diagnostic tests and your own observations do you have an opinion satisfactory to yourself and to a reasonable degree of medical certainty as to whether his job substantially aggravated the preexisting condition that he had in his back?
 A. Well, based on the history that was provided to me that he was — had been doing well with — with — out and at the time had not been having significant pain, it would appear that the event that occurred at work did aggravate his condition.
 Q. Would you say that it substantially aggravated his condition?
A. I would say it substantially aggravated.
18. Dr. Birkedal further opined that plaintiff's condition at the time he saw him warranted the surgical intervention and that plaintiff will likely need future medical treatment.
19. Dr. Lestini did an Independent Medical Examination (IME) of plaintiff on June 22, 2004. On the question of causation he testified that he thought it would be speculative to relate plaintiff's problems to his work injury. He testified, "I think that the event of lifting, et cetera, at work certainly could have caused that area to become painful and would have necessitated a subsequent fusion." He further testified, "I think the fact that he was working at what sounded like a fairly physical, heavily exertion-type position aggravated this, so there is a work-related scenario whether there's an injury or not, per se, I don't know." When asked whether the job "materially aggravated the pre-existing condition,"Dr. Lestini replied, "That's the history as I understand it," and he had no reason to doubt the credibility of the history as presented by the plaintiff. Dr. Lestini also agreed that the incident at work could have caused plaintiff's pain and necessitated a fusion.
20. As to apportionment, Dr. Lestini opined that Plaintiff has a 35% permanent partial disability to the spine, and that approximately 50% of that would have been attributable to the pre-existing condition. In his IME report, however, Dr. Lestini declined to apportion and wrote "it would be unclear to me as to exactly how to portion out specific percentages as to each contributing factor."
21. To address the confusion created by Dr. Hayes' testimony that he thought he was releasing plaintiff to the truck switching job, rather than dockworker, plaintiff was deposed after the hearing. He testified that he had discussed the truck-switching job with Dr. Hayes, and on the day of his release from Dr. Hayes' care, he talked face-to-face with Dr. Hayes about the type of work he would be doing upon his return to work. Plaintiff testified that the truck-switching job was an opportunity he could pursue in the future. At the time of his return to work, plaintiff was capable of working in his pre-injury job for defendant-employer and he was capable of earning his pre-injury wages in the competitive marketplace.
22. Dr. Birkedal testified that he had intended to assess the CT scan to see if plaintiff had a solid fusion before declaring plaintiff at maximum medical improvement. Based on the greater weight of the evidence, a definitive determination that plaintiff is at maximum medical improvement has not been made and plaintiff has not been given a final impairment or disability rating.
23. Plaintiff needs to have his work capacity evaluated to determine what he can and cannot do. Since April 15, 2003, Plaintiff has been temporarily totally disabled.
24. Plaintiff will need future medical treatment with regard to his back injury.
25. Plaintiff earned $20.36 per hour and his average wage was $814.40 per week.
 * * * * * * * * * * *
The foregoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The Plaintiff suffered a compensable injury by accident arising out of and in the course of his employment as a direct result of a specific traumatic incident of work assigned by defendant-employer on April 13, 2003. N.C. Gen. Stat. § 97-2(6).
2. Although Plaintiff had a pre-existing condition, he had regained his wage earning capacity until the specific traumatic incident of April 13, 2003, which materially and significantly aggravated his pre-existing condition, as a result of which the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to the same extent. Morrison vs. Burlington Industries,304 N.C. 1, 18; 282 S.E.2d 458, 470 (1981).
3. Plaintiff's average weekly wage of $814.40 yields a compensation rate of $542.93 per week. N.C. Gen. Stat. § 97-2(5).
4. As a result of the compensable injury, Plaintiff has been incapable of working since April 15, 2003 and is entitled to temporary total disability at the rate of $542.93 per week for the period from April 15, 2003 through the date of hearing before the Deputy Commissioner and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have the Defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury for so long as such treatment is reasonably required to provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the Defendant shall pay temporary total disability compensation to the Plaintiff at the rate of $542.93 per week for the period from April 15, 2003 through the date of hearing before the Deputy Commissioner and continuing until further order of the Commission. All accrued compensation shall be paid in lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to Plaintiff herein is approved and shall be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel as follows: twenty-five percent of the accrued compensation shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff when bills for the same have been approved, in accordance with Industrial Commission procedure.
4. Defendant shall pay the costs.
This the __ day of March 2006.
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ DIANNE C. SELLERS COMMISSIONER
 S/_________________ LAURA K. MAVRETIC COMMISSIONER